MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (Bar No. CA 160648)
E-mail: rbecker@manatt.com
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
SHAWN G. HANSEN (Bar No. CA 197033)
E-mail: shansen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for*
KELORA SYSTEMS, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| eBay Inc. and Microsoft Corporation,<br>*Plaintiffs and Counter-defendants,*<br>vs.<br>Kelora Systems, LLC,<br>*Defendant and Counterclaimant.* | Case No. 4:10-cv-04947-CW<br>**JOINT STIPULATION REGARDING AGREED PROVISIONS OF PROPOSED PROTECTIVE ORDER AND PARTY STATEMENTS REGARDING DISPUTES FOR THE COURT'S DETERMINATION** |
| Kelora Systems, LLC<br>*Plaintiff and Counter-defendant,*<br>vs.<br>Target Corporation, et al.,<br>*Defendants and Counterclaimants.* | Case No. 4:11-cv-01548-CW<br>(Related) |
| Cabela's, Inc.,<br>*Plaintiff and Counter-defendant,*<br>vs.<br>Kelora Systems, LLC,<br>*Defendant and Counterclaimant.* | Case No. 4:11-cv-01398-CW<br>(Related) |

| | |
|---|---|
| Nebraska Furniture Mart, Inc.,<br>*Plaintiff and Counter-defendant,*<br>vs.<br>Kelora Systems, LLC,<br>*Defendant and Counterclaimant.* | Case No. 4:11-cv-02284-CW<br>(Related) |

## I. INTRODUCTION

The Parties to the above-captioned cases have met and conferred regarding the Proposed Protective Order for these cases and respectfully submit herewith the provisions to which they have agreed and their respective statements regarding the provisions on which they have been unable to agree.

In summary, the Parties have agreed upon all provisions of the Proposed Protective Order except with respect to certain aspects of (1) the source code inspection environment in Paragraph 5(d) and (2) the restrictions on patent prosecution in Paragraph 19.

Exhibit A to this submission is a redline showing Kelora's proposed edits to the latest draft of the Protective Order proposed by the Accused Infringers. The Accused Infringers agree to Kelora's edits of Paragraph 31. Thus the edits shown in Paragraph 5(d) and 19 of Exhibit A are provisions that Kelora wants, but which the Accused Infringers do not want. The Parties' statements in support of their respective proposals on the disputed provisions are set forth below.

## II. PARTIES' STATEMENTS REGARDING DISPUTED PROVISIONS IN PARAGRAPHS 5(d) AND 19

### A. First Dispute: Source Code (Paragraph 5(d))

#### 1. Kelora's Statement

Kelora agrees that the Court's Protective Order in these matters should include strong protections for confidential materials, as is evident in Exhibit A. However, the Accused Infringers' proposals regarding the conditions for inspection of source code in Paragraph 5(d) and the scope of the patent prosecution bar in Paragraph 19 seek to impose unreasonable and unfairly prejudicial restraints for which there is no good cause. The Accused Infringers' proposals are

contrary to controlling law, not justified in view of the extensive protections to which Kelora agrees, and would subject Kelora to undue prejudice, burdens, expense, and inconvenience.

With respect to the source code inspection provisions in Paragraph 5(d), Kelora has proposed extensive restrictions that are commensurate with the sensitivity of source code but also permit a reasonably effective and convenient inspection. The Accused Infringers' proposals would prevent Kelora from compiling the source code into object code and from analyzing the code in an environment approximating the real-world operation of the Accused Instrumentalities. The Accused Infringers' proposals also would impose numerous physical constraints, rendering the inspection as unduly burdensome, time-consuming, and inconvenient as possible. Moreover, the Accused Infringers seek to invade Kelora's work product by permitting the Accused Infringers to visually monitor the entire source code inspection and to be apprised of time, date, and identity details concerning access to paper copies of source code, thus giving the Accused Infringers improper insights into the mental impressions and legal strategies of Kelora's counsel.

**a. Applicable Law**

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits parties to obtain discovery of all non-privileged information reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). Despite the broad scope of Rule 26(b)(1), a Court may limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2)(C)(iii). In addition, the Court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense by directing, inter alia, that trade secrets or other confidential information research, development, or commercial information not be revealed or be revealed only in a designated way. FED. R. CIV. P. 26(c)(1)(G).

The party seeking a protective order generally bears the burden of establishing good cause. *In re Terra Int'l, Inc.*, 134 F.3d 302, 305 (5th Cir. 1998); *see also Adobe Sys. v. Davachi*, 2011 U.S. Dist. LEXIS 71296, *9 (Beeler, J.) (N.D. Cal. July 1, 2011) (citations omitted). The party attempting to establish good cause must demonstrate "a clearly defined and serious injury to the party seeking closure." *See, e.g., L.G. Philips LCD Co. v. Tatung Co.*, No. C 07 80073-WHA,

2007 U.S. Dist. LEXIS 24181 (Alsup, J.) (N.D. Cal. Mar. 20, 2007). Accordingly, the Accused Infringers bear the burden of establishing good cause for their proposed restrictions above and beyond the already substantial restrictions to which Kelora agrees.

**b. Paragraph 5(d) - Source Code Inspection Conditions**

**i. Paragraph 5(d)(i) - Build Environment**

Within the context of Paragraph 5(d)'s prescription of the environment for source code inspection, Kelora proposes in Paragraph 5(d)(i) that each Alleged Infringer should be required to produce "a complete, functional build environment for the source code of its accused instrumentalities, including build instructions, scripts and/or other information used in the ordinary course of business to develop, build, test and debug the source code." (*See* Ex. A, ¶5(d)(i).) The Accused Infringers reject this proposal outright.

Source code itself cannot be run by a computer. Rather, compilers translate source code into object code, which then can be run by a computer. Thus, compiling the source code into object code and running the resulting software on a computer may assist Kelora's counsel and/or experts in evaluating the Accused Instrumentalities and is therefore within the broad scope of discovery provided under Rule 26(b)(1). FED. R. CIV. P. 26(b)(1). Moreover, the Accused Infringers have not to date identified any "clearly defined and serious injury" that would flow from Kelora's proposal. *See, e.g., L.G. Philips LCD*, No. C 07 80073-WHA, 2007 U.S. Dist. LEXIS 24181.

**ii. Paragraph 5(d)(iii) – Hours of Access**

Subject to the agreed language in Paragraph 5(d)(iii) providing that "best efforts" will be made to restrict source code inspections to regular business hours, Kelora proposes additional language permitting access to source code outside of regular business hours, reflecting the realities of the schedule the Court has set in these cases and the number of Accused Infringers. (*See* Ex. A, ¶5(d)(iii).) In addition, Kelora proposes that the dispute resolution procedures set out in Paragraph 18 may be followed in the event that a Producing Party believes that after-hours and weekend access is being unreasonably utilized. (*Id.*) Kelora's investigation of the Accused Instrumentalities may be prejudiced by an inflexible limitation to business hours, while the minor

inconvenience of arranging for after-hours access can in no way be considered the sort of "clearly defined and serious injury" that the Accused Infringers must show. *See, e.g.*, *L.G. Philips LCD*, No. C 07 80073-WHA, 2007 U.S. Dist. LEXIS 24181.

**iii. Paragraph 5(d)(iv) – Cell Phones and Laptops; Trial Arrangements**

The parties further dispute whether the authorized individuals inspecting the source code may bring their personal cell phones and laptop computers into the source code inspection room, subject to all of the other restrictions on source code. Kelora's proposal would permit authorized individuals to bring such commonplace work tools into the source code inspection room so that they may take notes and stay in touch with the outside world. As it is subject to the other provisions of the Protective Order, Kelora's proposal does not permit the networking/connection of any such cell phones or laptop computers to any Source Code Computer(s). The Accused Infringers' proposal would be unfairly prejudicial by depriving those inspecting the source code of the most basic tools.

In addition, to facilitate logistics around the time of trial, Kelora proposes that the source code should be made available for inspection within twenty miles of the trial location beginning one week prior to the beginning of trial and that the parties will negotiate in good faith on the manner and logistics of such trial-time source code access. (*See* Ex. A, ¶ 5(d)(iv).) As with the provisions discussed above, Kelora's investigation of the Accused Instrumentalities and presentation at trial would be prejudiced without these provisions, while the Accused Infringers have identified no "clearly defined and serious injury" justifying their more restrictive proposals. *See, e.g., L.G. Philips LCD*, No. C 07 80073-WHA, 2007 U.S. Dist. LEXIS 24181.

**iv. Paragraph 5(d)(v) – Configuration of Source Code Computer**

Because the Accused Instrumentalities involve network communications between software running on different computers (*e.g.*, between a server and a client), Kelora seeks the option to have two Source Code Computers on which to observe the running software in an environment that approximates real-world conditions. (*See* Ex. A, ¶5(d)(v).) Under Kelora's

proposal, two Source Code Computers could be connected to each other to permit analysis of communications between them, but otherwise all of the restrictions that the Accused Infringers accept for Source Code Computers would apply, including restrictions against connecting any Source Code Computer to a network or other non-Source Code Computer. (*Id.*)

In addition, Kelora proposes that its authorized outside counsel and/or experts may request installation on the Source Code Computers of commercially available, licensed software tools for viewing, searching, and annotating the source code. (*Id.*) And Kelora proposes the common sense provision that a back-up copy of the source code may be made on the secured Source Code Computers, to remain there subject to all the provisions governing source code. (*Id.*) This will help preserve the source code in the exact form in which it is produdced, while also permitting the inspecting party to annotate, number the lines of, and bates label paper copies of source code for permitted litigation purposes.

Again, Kelora's investigation of the Accused Instrumentalities may be prejudiced without these provisions, while the Accused Infringers have identified no "clearly defined and serious injury" justifying their more restrictive proposals. *See, e.g., L.G. Philips LCD*, No. C 07 80073-WHA, 2007 U.S. Dist. LEXIS 24181.

**v. Paragraphs 5(d)(vii) and 5(d)(xiv) – Invasion of Work Product**

The parties further dispute whether the Accused Infringers should be permitted to invade Kelora's work product by monitoring Kelora's inspection of source code. Kelora agrees that entrances and exits from the source code viewing room may be observed. (*See* Ex. A, ¶5(d)(vii).) However, to protect against invasion into work product, Kelora does not agree with the Accused Infringers' proposal permitting them to visually monitor all source code inspections.

The parties also dispute whether the protective order should require the invasion of Kelora's work product reflected in printed excerpts of source code. Kelora agrees that the Receiving Party should maintain a log of all printed or electronic copies of source code that it delivers to qualified persons. (*See* Ex. A, ¶5(d)(xiv).) However, Kelora does not agree with the Accused Infringers' proposal that this log should identify not just the identity of individuals

inspecting the code but also the dates and times of any access.

Under the Accused Infringers' proposal, Kelora would be permitted to print only that source code deemed most relevant for analysis and then required to disclose details of who reviews the same and when, potentially revealing the mental impressions and strategies of Kelora's counsel and experts. This is a clear invasion of Kelora's work product for which there is no justification. Once again, Kelora's investigation of the Accused Instrumentalities and related work product may be prejudiced without these provisions, while the Accused Infringers have identified no "clearly defined and serious injury" justifying their more restrictive proposals. *See, e.g.*, *L.G. Philips LCD*, No. C 07 80073-WHA, 2007 U.S. Dist. LEXIS 24181.

**2. Accused Infringers' Statement(s)**

The Accused Infringers believe that this Court should adopt the source code provisions found in the model Protective Order provided by this Court for patent cases ("the Model Order"). The Model Order from this Court is attached as Exhibit D-1, and the source code provisions are found on pages 13–15. The Patent Local Rules provide that "[t]he Protective Order authorized by the Northern District of California [i.e., Exhibit D-1] shall govern discovery unless the Court enters a different protective order." Patent L.R. 2-2. The Accused Infringers are satisfied with the provisions concerning source code found in the Model Order and see no reason to deviate from them in this case. Kelora has failed to articulate any compelling reasons to depart from the Model Order and impose additional burdens and expenses on the Accused Infringers associated with its proposals.

Kelora's proposals concerning source code deviate significantly from the Model Order provided by this Court for patent cases. *Compare* Ex. A at 9–18 (Kelora's proposals), *with* Ex. D-1 at 13:24–15:9 (N.D. Cal. model Protective Order for patent cases). The Accused Infringers negotiated in good faith with Kelora concerning its proposed changes to the Model Order, and the Accused Infringers were willing to accept some of Kelora's proposed changes, but Kelora's proposed changes discussed below are unacceptable to the Accused Infringers — and at odds with the Model Order — and thus the Accused Infringers believe that all of Kelora's proposed

changes should be rejected and the source code provisions found in the model Protective Order should be adopted in their entirety.

***Ex. A at 9, paragraph (i): "complete, functional build environment"***: The Model Order provides that source code must be made available for inspection "in a format allowing it to be reasonably ***reviewed*** and ***searched***." Ex. D-1 at 14:8. Kelora's proposal, by way of contrast, would require each Accused Infringer to provide a "***complete***, functional ***build environment*** for the source code of its accused instrumentalities." Ex. A at 9. In other words, rather than provide for the protection of the Accused Infringer's source code, Kelora seeks to covert the Model Order into an order to create systems and produce information. Among other things, Kelora wants to be able to *compile* (i.e., "build") the source code, and then *run* the compiled code on a machine. (Along the same lines, Kelora's proposal on page 11 would require each Accused Infringer to provide *two* computers "[t]o facilitate analysis of network communications" between the two computers running the compiled source code.) As to the demanded source code itself, Kelora's proposal far exceeds the provision of the Model Order and what is reasonably calculated to lead to the discovery of admissible evidence because it would effectively require each Accused Infringer to provide source code for the *entire* accused website — even though the vast majority of the source code for each accused website is completely unrelated to the accused functionality — because the only way to compile and run source code is if you have access to *all* the code. The Model Order, by way of contrast, recognizes that only *some* source code in any given product will be relevant to a case, and thus the Model Order only requires providing a copy of *that* particular source code in a format that can be "reviewed and searched." There is no requirement in the Model Order that an accused infringer provide *all* its source code, let alone create a "complete, functional build environment" as proposed by Kelora.

***Ex. A at 10, paragraph (iii): "Access will also be provided on holidays, Saturdays, and Sundays"***: The Model Order provides that source code must be made available for inspection "during ***normal business hours*** or at other mutually agreeable times." Ex. D-1 at 14:8–:9. Kelora's proposal, by way of contrast, would require each Accused Infringer to make source code available for inspection "on ***holidays, Saturdays, and Sundays***." Ex. A at 10. That is

unreasonable and burdensome. As the Model Order recognizes, source code will normally be made available for inspection at "an office of the Producing Party's counsel," and thus it is unreasonable for Kelora to be able to force an Accused Infringer's counsel to keep its office open on holidays and weekends whenever Kelora feels like inspecting source code. There is no reason why Kelora cannot complete its source code inspection during normal business hours, as provided by the Model Order.

***Ex. A at 10, paragraph (iv): "source code shall be provided within twenty miles of the trial location"***: The Model Order provides that source code must be made available for inspection "at an ***office of the Producing Party's counsel*** or another mutually agreed upon location." Kelora's proposal, by way of contrast, would require that during trial, "source code shall be provided within ***twenty miles of the trial location***." Kelora's proposal is unnecessary, because fact discovery will be over long before trial begins, and thus no inspections will take place *anywhere* during trial. To the extent Kelora is allowed to inspect source code during trial, Kelora's proposal is burdensome on those parties whose counsel's offices are more than 20 miles from the Oakland courthouse — which would include most parties, since even Palo Alto (home to many patent lawyers) is more than 20 miles from the Oakland courthouse. Kelora's proposal is also unnecessary, since the Model Order allows a party to "request ***paper copies*** of limited portions of source code that are reasonably necessary for . . . trial." Ex. D-1 at 14:17–:19.

***Ex. A at 11, paragraph (v): "experts may request that . . . software tools . . . be installed on the secured computer"***: The Model Order provides that source code must be provided "in a format allowing it to be reasonably reviewed and searched." Ex. D-1 at 14:8. Kelora's proposal, by way of contrast, would obligate each Accused Infringer to install on its computer (within two days) whatever "software tools" Kelora provides. *See* Ex. A at 11. That is unreasonable because the computers containing source code are generally highly-secure machines that do not permit ***any*** files to be transferred onto (or away from) the machine — that is what makes the machines so secure. Thus it is not surprising that there is no provision in the Model Order that would require an Accused Infringer to install "software tools" whenever desired by Kelora.

***Ex. A at 12–13: printouts of source code***: The Model Order provides that Kelora may "request paper copies of ***limited*** portions of source code that are reasonably necessary." Ex. D-1 at 14:17–:18. If there is a dispute over the amount of source code to be printed, then the burden would be on ***Kelora*** to justify to the Court the amount of source code it wanted printed. *See* Ex. D-1 at 8:28–9:1, 14:22–:26. Kelora's proposal, by way of contrast, would put the burden on the ***Accused Infringers*** to challenge the amount of source code being requested in paper copy. That has it backwards, as recognized by the Model Order, because source code is extremely confidential and the burden should be on the party trying to convert source code to paper, which is much less secure.

***Ex. A at 14, paragraph (vii): "Producing Party shall not . . . monitor in any way the Receiving Party's inspection of source code"***: The Model Order provides that "[t]he Producing Party ***may*** visually monitor the activities of the Receiving Party's representatives during any source code review." Ex. D-1 at 14:13–:15. Kelora's proposal, by way of contrast, would ***prevent*** all visual monitoring during source code review. *See* Ex. A at 14. Again, that has it backwards, as recognized by the Model Order, given the extremely confidential nature of source code. It is reasonable for representatives of the Accused Infringers to visually monitor Kelora as it inspects source code, and as provided by the Model Order, that visual monitoring would be "only to ensure that there is no unauthorized recording, copying, or transmission of the source code." Ex. D-1 at 14:15–:16.

***Ex. A at 16, paragraph (xiv): Logging access to source code***: The Model Order provides that "[t]he Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form." Ex. D-1 at 16:27–:28. Kelora's proposal, by way of contrast, has removed this important safeguard. *See* Ex. A at 16. If someone is given access to an Accused Infringer's extremely confidential source code, it is only reasonable that the identity of the person be logged, as recognized by the Model Order.

For at least these reasons, Kelora's deviations from the source code provisions in the Model Order should be rejected, and instead the source code provisions in the Model Order should be adopted by this Court in their entirety.

### B. Second Dispute: Prosecution Bar (Paragraph 19)

#### 1. Kelora's Statement

With respect to the prosecution bar provisions in Paragraph 19, Kelora has agreed to a prosecution bar provision but rejects as contrary to law the overreaching scope of the Accused Infringers' proposal. (*See* Ex. A, ¶ 19.) Consistent with the Federal Circuit's holdings in *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) and its progeny, including the recent case *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1377 (Fed. Cir. 2010),[1] and because the Accused Infringers have offered no evidence that any counsel in this case is involved in "competitive decisionmaking" on behalf of any other clients, Kelora's proposal limits the prosecution bar to prosecution "on behalf of the Receiving Party" and to the general subject matter at issue in this case, *i.e.*, "guided parametric search".

The Accused Infringers reject these reasonable limitations and seek to impose what amounts to a per se ban against patent prosecution, ignoring the individualized analysis required under *U.S. Steel* and *In re Deutsche Bank* of whether any individual attorney's prosecution on behalf of any clients not involved in this litigation constitutes "competitive decisionmaking". Compounding this error, the Accused Infringers also propose that the prosecution bar should extend to subject matter far beyond that at issue in this case, including "search engines, web search, or database or server search technology". This would encompass virtually any computer search technology, contrary to the individualized approach counseled in *U.S. Steel* and *In re Deutsche Bank*.

##### a. Applicable Law

A party seeking to include in a protective order a provision effecting a patent prosecution bar bears the burden of establishing good cause. *In re Deutsche Bank*, 605 F.3d 1378. "[A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of

[1] The determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law. *In re Deutsche Bank*, 605 F.3d at 1378.

proprietary competitive information." *In re Deutsche Bank*, 605 F.3d at 1381.[2]

In determining the scope of a patent prosecution bar, courts consider the factual circumstances relating to risk of "inadvertent or actual disclosure," and weigh the risk against the potential that the protective order may impair the other party's ability to prosecute and defend its claims. *U.S. Steel*, 730 F.2d at 1468. "Whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis", and "the counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client." *In re Deutsche Bank*, 605 F.3d at 1378, quoting *U.S. Steel*, 730 F.2d at 1468.

The Federal Circuit has explained that "competitive decisionmaking" refers to "a counsel's activities, associations, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468. The standard is not "regular contact" with corporate officials who make "policy," or even competitive decisions, but "advice and participation" in "competitive decisionmaking." *See Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991).

Even if a district court is satisfied a risk of inadvertent disclosure exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice. *In re Deutsche Bank*, 605 F.3d at 1380; *U.S. Steel*, 730 F.2d at 1468; *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

**b. Discussion**

The Accused Infringers propose what amounts to a per se ban on patent prosecution. However, the Federal Circuit has expressly counseled against such a per se rule in *U.S. Steel* and *In re Deutsche Bank*. *See, e.g.*, *In re Deutsche Bank*, 605 F.3d at 1378; *U.S. Steel*, 730 F.2d at 1468. It is instructive here to review the application of *U.S. Steel* by another district court that

[2] The discussion in *In re Deutsche Bank*, 605 F.3d at 1381, regarding the burden on a party seeking an exemption from a prosecution bar does not apply here because Kelora agrees to a bar against prosecution on its behalf with no individuals exempted.

rejected an improperly broad patent prosecution bar, a result expressly approved by the Federal Circuit. *See Sibia Neurosciences v. Cadus Pharmaceutical*, 1997 U.S. Dist. LEXIS 24130 (S.D. Cal. 1997), petition for writ of mandamus denied, *In re Sibia Neurosciences*, 1997 U.S. App. LEXIS 31828 (Fed. Cir. 1997) (unpublished).

In *Sibia*, Plaintiff Sibia sought an order that any attorney who reviewed protected information would be barred from prosecuting patents "in the area of biotechnology at issue until a year after the conclusion of the litigation." *Sibia*, 1997 U.S. Dist. LEXIS 24130 at *2. Defendant Cadus, which was represented in the litigation by attorneys who also prosecuted patents on behalf of Cadus as well as other clients, opposed the inclusion of such a provision. *Id*. The magistrate judge granted Sibia's request and entered a protective order including a broad ban on patent prosecution. *Id*. at *3-5.

The district judge overturned the magistrate's decision and struck from the protective order the language imposing a blanket bar on prosecution of patent applications in the general subject matter of the case. *Id*. at *2-3. The district judge held that the magistrate's order was "clearly erroneous and contrary to law" because "[t]he applicable law requires the court to consider both the risk of inadvertent disclosure arising out of counsel's involvement in competitive decisionmaking and the hardship to the party from disqualification of the counsel from viewing certain information." *Id*. at *21. Despite finding that one attorney working on the litigation engaged in patent prosecution for Cadus as well as more than fifty other patent prosecution clients in the area of biotechnology, the district judge concluded that this attorney was not involved in competitive decisionmaking and that the denial of access would impose a severe hardship unwarranted by any risk of inadvertent disclosure. *Id*.

The district judge in *Sibia* expressly rejected the argument that patent prosecution amounts to involvement in competitive decisionmaking or otherwise creates an unacceptable risk of inadvertent disclosure. *Id*. at *23-24, citing *Fluke Corp. v. Fine Instruments Corp.*, 1994 U.S. Dist. LEXIS 16286, 32 U.S.P.Q.2d 1789, 1793 (W.D. Wash. 1994); *Glaxo Inc. v. Genpharm Pharmaceuticals, Inc.*, 796 F. Supp. 872, 874 (E.D.N.C. 1992). The Federal Circuit expressly approved the district court's holding. *In re Sibia Neurosciences*, 1997 U.S. App. LEXIS 31828,

*8-*10.

In doing so, the Federal Circuit reiterated its holding in *U.S. Steel*:

> denial or grant of access . . . cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order. Therefore, denying access to Cadus's outside counsel on the ground that they also prosecute patents for Cadus is the type of generalization counseled against in *U.S. Steel*. The facts, not the category, must inform the result. Our holding in *U.S. Steel* dictates that each case must be decided based on the specific facts involved therein.

*Id*. at *7. The Federal Circuit confirmed that "the standard is not 'regular contact' with other corporate officials who make 'policy,' or even competitive decisions, but 'advice and participation' in 'competitive decisionmaking.'" *Id*., citing *Matsushita*, 929 F.2d at 1580.

Kelora has agreed to a prosecution bar provision that would preclude patent prosecution on behalf of Kelora, which is more restrictive than the order in *Sibia* that was expressly approved by the Federal Circuit. *In re Sibia Neurosciences*, 1997 U.S. App. LEXIS 31828, *8-*10. Although the Accused Infringers bear the burden of establishing good cause for their more restrictive proposal, they have offered no evidence whatsoever that patent prosecution by Kelora's counsel for other, unidentified current and/or future clients not involved in this litigation constitutes "advice and participation" in "competitive decisionmaking." *See id*. Such a provision improperly deprives such uninvolved clients of the right to their counsel of choice with no showing of any attorney's involvement in competitive decisionmaking on their behalf. *In re Deutsche Bank*, 605 F.3d at 1380; *U.S. Steel*, 730 F.2d at 1468; *Brown Bag*, 960 F.2d at 1470.

In addition, Kelora proposes to clarify that "prosecution" as used in the prosecution bar does not include distinguishing prior art or advising and/or consulting regarding the same with persons who may be involved in "prosecution" as defined in the Protective Order. (*See* Ex. A, ¶ 19.) Distinguishing prior art, as opposed to affecting the scope of patent claims, poses no threat of disclosure of any confidential information of the Accused Infringers and there is thus no "clearly defined and serious injury" justifying their more restrictive proposals. *See, e.g., L.G. Philips LCD*, No. C 07 80073-WHA, 2007 U.S. Dist. LEXIS 24181. In contrast, precluding coordination on prior art distinctions would be unfairly prejudicial to Kelora's ability to defend the validity of its patent with consistency.

**2. Accused Infringers' Statement(s)**

The parties agree that a patent prosecution bar is appropriate, as does the Federal Circuit and the Model Order in this Court, *see* Ex. D-1 at 13:7–:23. Indeed, prosecution bars are so important that the Federal Circuit recently took the extraordinary step of granting a mandamus petition to provide guidance on the appropriate scope of prosecution bars in patent cases. *See In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

There are two disputes in this case regarding the proposed prosecution bar: (1) whether an individual that receives highly confidential technical information may draft patents and claims for entities that are ***not*** a party to this suit, where that same individual would be barred from performing the same activities for an entity that ***is*** a party to this suit; and (2) whether the technical scope of the bar should be limited to "guided parametric searching" — a term that is unfairly vague and unreflective of the asserted claims. *See* Ex. A at 27. The appropriate answer to both questions is no.

**a. Limiting the prosecution bar to "on behalf of the receiving party" is contrary to this Court's interim model protective order and Federal Circuit precedent**

The proposed protective order defines "prosecution" as "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims." *See* Ex. A at 27. Individuals undertaking such activities are involved in competitive decision making and appropriately subject to a prosecution bar. These activities constitute competitive decision making, which provides good cause for a prosecution bar. *See In re Deutsche Bank Trust Co.*, 605 F.3d at 1380 (For attorneys involved in "strategic decisions on the type and scope of patent protection that might be available or worth pursuing" or "strategically amending or surrendering claim scope during prosecution," "[t]he risk of inadvertent disclosure of competitive information learned during litigation is . . . much greater" and "such attorneys would not likely be properly exempted from a patent prosecution bar.").

Kelora's attempt to limit the bar to those prosecuting "on behalf of the Receiving Party" fails to adequately safeguard against the risk of inadvertent disclosure, let alone comport with this Court's Model Order or Federal Circuit precedent. The Model Order is not limited to work "on

behalf of the Receiving Party." *See* Ex. D-1 at 13:8–:15. Rather, it broadly and appropriately provides that "any individual who receives access to [certain confidential] information shall not be involved in the prosecution of patents or patent applications relating to . . . ." *See id.* at 13:8–:11.

Kelora fails to provide any compelling reasons to deviate from the Model Order on this issue or to exempt at attorney from prosecuting patents for non-parties in the same areas where it cannot prosecute patents for a party. Indeed, the prosecution bar proposed by Kelora's counsel would merely prohibit them from prosecuting on behalf of the recently formed holding company asserting the patent in this case. And, from a practical standpoint, limiting a bar to activities done on behalf of a client who is the receiving party also ignores complexities that may arise if a "receiving party" is later acquired or otherwise reorganized. It may no longer be clear who the "receiving party" is.

Kelora's narrow bar also conflicts with *In re Deutsche Bank Trust Co*., 605 F.3d 1373 (Fed. Cir. 2010). There, the Federal Circuit evaluated the district court's entry of a protective order that included a prosecution bar that excluded plaintiff's lead trial counsel. The Federal Circuit framed the entire prosecution bar debate as a determination of "whether a trial lawyer should be . . . barred from representing ***clients*** in certain matters before the U.S. Patent and Trademark Office." *Id.* at 1377 (emphasis added). The use of "clients" signals that prosecution bars should apply to clients at-large, not merely the party to a particular litigation. This approach also comports with the Federal Circuit's mandate of balancing risk against harm — if a bar is applied only to prosecution work done on behalf of one party, a potentially huge risk remains that the counsel-in-question may use confidential information to benefit other clients, who may well be competitors of the disclosing party. *Id.* at 1380–81. Nothing in the Federal Circuit's decision suggests that this type of loophole on the risk side of the equation should be allowed.

Moreover, the Federal Circuit's emphasis on performing factual inquiries on a counsel-by-counsel basis (not a client-by-client basis) dictates that prosecution bar restrictions should follow each affected ***counsel***, not one particular ***client*** of a counsel. To the extent an exception for an affected counsel for a particular client is sought, the party seeking the exception must show

"(1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decision making related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *Id.* at 1381. Kelora has offered no such showings for any client(s).

For at least these reasons, Kelora's proposed limitation of the patent prosecution bar to "on behalf of the Receiving " must be rejected.

**B. Limiting the bar's scope to "guided parametric search" is overly narrow and conflicts with the interim model protective order**

Kelora also seeks to limit the prosecution bar to patents or applications relating to "guided parametric search" instead of the appropriate list of technology areas proposed by the Accused Infringers, *see* Ex. A at 27. While the meaning of Kelora's term is itself is unclear, to the extent Kelora contends that the subject matter of the claimed invention is "guided parametric search" and the bar should therefore be limited to same, its position is contrary to the Model Order. Specifically, in order to protect a party's trade secrets and proprietary information, the Model Order defines a bar that includes the "subject matter of the invention ***and*** of ***highly confidential technical information to be produced***." Ex. D-1 at 13:11–:12 (emphasis added).

As a compromise, the Accused Infringers proposed to narrow the scope of the Model Order's bar to "search engines, web search, or database or server search technology." *See* Ex. A at 27. This scope is reasonable because it reflects the requirements of the asserted claims. Specifically, the asserted claims require, among other things, client-server communications, providing and reading data files, accepting selection criteria, displaying a feature screen, and determining what satisfies selection criteria:

> 1. A method for assisting a user in identifying a subfamily of items within a family of items said method performed with a server connected to a client computer through a computer network, comprising the steps of:
>
> (a) providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item,

> (b) reading said data file,
>
> (c) displaying a feature screen indicating said alternatives represented in the family,
>
> (d) accepting a first selection criteria of at least one alternative,
>
> (e) determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria,
>
> (f) determining available alternatives represented in the first subfamily,
>
> (g) revising said feature screen to indicate the available alternatives of the first subfamily….

*See* Ex. D-2 (steps (h)-(k) omitted).

Because (1) the Accused Infringers' proposed scope is appropriately tailored to protect their confidential information from inadvertent use, (2) the Accused Infringers' proposed scope is a reasonable compromise, and (3) Kelora's proposed scope is both ambiguous and overly narrow, the appropriate scope for the bar is "search engines, web search, or database or server search technology."

## III. CONCLUSION

For all these reasons, the parties respectfully request that the Court resolve the disputed issues above. Once these issues have been resolved, the parties will adjust the proposed Protective Order accordingly and submit it for the Court's approval. A Proposed Order is attached as Exhibit B.

DATED: August 11, 2011

By: /s/ Robert D. Becker

Robert D. Becker (Bar No. 160648)
<rbecker@manatt.com>
Ronald S. Katz (Bar No. 85713)
<rkatz@manatt.com>
Shawn G. Hansen (Bar No. 197033)
<shansen@manatt.com>
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Building 2
Palo Alto, California 94304
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for Kelora Systems, LLC*

By: /s/ Richard A. Cederoth

David T. Pritikin (*pro hac vice*)
<dpritikin@sidley.com>
Richard A. Cederoth (*pro hac vice*)
<rcederoth@sidley.com>
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Theodore W. Chandler (Bar No. 219456)
<tchandler@sidley.com>
Aaron M. Farber (Bar No. 270851)
<afarber@sidley.com>
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

<Kelora-Microsoft-eBay@sidley.com>

*Counsel for Plaintiff and Counterclaim-Defendant eBay Inc.*

By: /s/ Richard A. Cederoth

David T. Pritikin (*pro hac vice*)
<dpritikin@sidley.com>
Richard A. Cederoth (*pro hac vice*)
<rcederoth@sidley.com>
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Theodore W. Chandler (Bar No. 219456)
<tchandler@sidley.com>
Aaron M. Farber (Bar No. 270851)
<afarber@sidley.com>
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

<Kelora-Microsoft-eBay@sidley.com>

David E. Killough (Bar No. 110719)
<davkill@microsoft.com>
MICROSOFT CORPORATION
One Microsoft Way, 8/2076
Redmond, Washington 98052
Telephone: (425) 703-8865
Facsimile: (425) 869-1327

*Counsel for Plaintiff and Counterclaim-Defendant Microsoft Corporation*

By: */s/ Richard S. Zembek*

John A. O'Malley (Bar No. 101181)
jomalley@fulbright.com
Aaron D. Gopen (Bar No. 268451)
agopen@fulbright.com
FULBRIGHT & JAWORSKI L.L.P.
555 South Flower Street, 41st Floor
Los Angeles, California 90071
Tel: (213) 892-9200
Fax: (213) 892-9494

Dan D. Davison (pro hac vice)
ddavison@fulbright.com
Attorney-in-Charge
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800

Dallas, Texas 75201-2784
Tel: (214) 855-8000
Fax: (214) 855-8200

Richard S. Zembek (pro hac vice)
rzembek@fulbright.com
Daniel S. Leventhal (pro hac vice)
dleventhal@fulbright.com
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151
Fax: (713) 651-5246

Gilbert A. Greene (pro hac vice)
ggreene@fulbright.com
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701-2978
Tel: (512) 474-5201
Fax: (512) 536-4598

Attorneys for Defendants
TARGET CORPORATION, AMAZON.COM, INC., OFFICE DEPOT, INC., COSTCO WHOLESALE CORPORATION, AND HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P.

By: /s/ Andrew Song
TED G. DANE (SBN 143195)
ANDREW SONG (SBN 236588)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
E-mail: Ted.Dane@mto.com
E-mail: Andrew.Song@mto.com

Attorneys for Plaintiff and Counter-Defendant
NEBRASKA FURNITURE MART, INC.

By *_/s/ Gregory P. Sitrick_*
Callie A. Bjurstrom, Esq.,
Luce, Forward, Hamilton & Scripps LLP
600 West Broadway, Suite 2600
San Diego, California 92101;
Telephone: 619.699.2586;
Fax: 619.645.5323;
E-mail: cbjurstrom@luce.com.

Gregory P. Sitrick *(pro hac vice)*
gregory.sitrick@quarles.com
Wendy K. Akbar *(pro hac vice)*
wendy.akbar@quarles.com
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona, 85004-2391
Tel: (602) 229-5200
Fax: (602) 420-5198

*Attorneys for Defendant*
CABELA'S, INC.

By: */s/ Niall A. MacLeod*
Niall A. MacLeod (MN#269281)
Aaron A. Myers (MN#0311959)
BARNES & THORNBURG LLP
225 South Sixth Street, Suite 2800
Minneapolis, Minnesota 55402
(612) 333-2111
Email: Niall.macleod@btlaw.com
Email: Aaron.myers@btlaw.com

*Attorneys for Defendant*
ROCKLER COMPANIES, INC.

By: */s/ Phillip Shinn*
Kent E. Baldauf, Jr.
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Phone (412) 471-8815
Fax (412) 471-4094
kbaldaufjr@webblaw.com
bclark@webblaw.com

Phillip F. Shinn
State Bar No. 112051
FOX ROTHSCHILD LLP
235 Pine Street, Suite 1500
San Francisco, CA 94104-2734
Phone (415)364-5558 - direct
Fax (415)391-4436 - fax
pshinn@foxrothschild.com

*Attorneys for Defendant*
NEWEGG INC.

By: */s/ John S. Letchinger*
John S. Letchinger
letchinger@wildman.com
Douglas S. Rupert
rupert@wildman.com
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606
312-201-2000

Clinton J. McCord
mmcord@wildman.com
WILDMAN, HARROLD, ALLEN & DIXON LLP
9665 Wilshire Blvd.
Beverly Hills, CA 90212
310-860-8700

*Attorneys for Defendant*
OFFICEMAX INC.

By */s/ Sarah E. Barrows*
GREENBERG TRAURIG, LLP
Sarah E. Barrows
153 Townsend Street
San Francisco, California 94107
Telephone: (415) 655- 1300
Facsimile: (415) 707-2010
Email: barrowss@gtlaw.com

Michael A Nicodema (pro hac vice)
Barry J Schindler (pro hac vice)
Douglas R. Weider (pro hac vice)
200 Park Ave
Florham Park, NJ 07932
Telephone: (973) 360-7900
Facsimile: (973) 295-1251
nicodemam@gtlaw.com
schindlerb@gtlaw.com
weider@gtlaw.

Attorneys for Defendant
CIRCUITCITY.COM INC.

By */s/ David B. Perry*

KILPATRICK TOWNSEND & STOCKTON LLP
David B. Perry (State Bar No. 255925)
Two Embarcadero Center, Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: dperry@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
Vaibhav P. Kadaba (pro hac vice pending)
Catherine E. Hart (pro hac vice pending)
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: wkadaba@kilpatricktownsend.com
chart@kilpatricktownsend.com

*Attorneys for Defendant*
1-800-FLOWERS.COM, INC.

By */s/ David S. Bloch*

Kimball R. Anderson (pro hac vice)
Marlon E. Lutfiyya (pro hac vice)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-5600
Tel: (312) 558-5600
Fax: (312) 558-5700

Howard I. Shin (pro hac vice)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700

David S. Bloch (SBN: 184530)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Tel: (415) 591-1000
Fax: (415) 591-1400

*Attorneys for Defendant*
DELL INC.

## SIGNATURE ATTESTATION

Pursuant to General Order No. 45(X)(B), I hereby certify that concurrence in the filing of this document has been obtained from the other signatory shown above.

/s/*Robert D. Becker*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 11, 2011, all counsel of record who are deemed to have consented to electronic service are being served, via the Court's CM/ECF system pursuant to Civil L.R. 5-4 and General Order 45, with a copy of the foregoing JOINT STIPULATION REGARDING AGREED PROVISIONS OF PROPOSED PROTECTIVE ORDER AND PARTY STATEMENTS REGARDING DISPUTES FOR THE COURT'S DETERMINATION.

By: *___/s/ Robert D. Becker___*
Robert D. Becker

300633336.1